1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| SENTINEL INSURANCE COMPANY, LTD., a Connecticut corporation,<br><br>            Plaintiff,<br><br>       v.<br><br>ALDERWOOD SURGICAL CENTER, LLC, a Washington limited liability company; JAVAD A. SAJAN, M.D., a Washington individual; and STATE OF WASHINGTON,<br><br>            Defendants. | Case Number: 2:23-cv-01759<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

COMES NOW the Plaintiff, Sentinel Insurance Company, Ltd. ("Hartford") by and through its attorneys of record, Gordon & Polscer, L.L.C., and alleges as follows:

1.      Hartford brings this action for a declaratory judgment that it has no obligation to defend, fund counterclaims, or indemnify Alderwood Surgical Center, LLC ("Alderwood") or its owner, Javad A. Sajan, M.D. in litigation filed against Alderwood and Dr. Sajan by the State of Washington for Alderwood and Dr. Sajan's alleged violations of the Consumer Review Fairness Act, the Health Insurance Portability and Accountability Act, and the Washington Consumer Protection Act.

/ / /

/ / /

COMPLAINT FOR DECLARATORY JUDGMENT
– Page 1

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
Telephone: (503) 242-2922

**PARTIES AND JURISDICTION**

2.      Plaintiff, Sentinel Insurance Company, Ltd. is a company organized under the laws of the State of Connecticut, with its principal place of business in Connecticut. Sentinel Insurance Company, Ltd. is a fully owned subsidiary of The Hartford Financial Services Group, Inc., a Delaware corporation with its principal place of business in Connecticut.

3.      Upon information and belief, Alderwood is a Washington limited liability company whose principal place of business is, and at all relevant times was, located at 3500 188th Street SW, Suite 670, Lynnwood, WA 98037.

4.      Upon information and belief, Alderwood does business under the associated business names of Allure Esthetic, Gallery of Cosmetic Surgery, and Seattle Plastic Surgery.

5.      Upon information and belief, Javad A. Sajan, M.D., at all relevant times, was and is an individual residing and domiciled in the state of Washington.

6.      Upon information and belief, at all relevant times, Dr. Sajan was the sole owner of Alderwood.

7.      The State of Washington, by and through the Consumer Protection Division of the Washington Attorney General's Office, brought suit against Alderwood and Dr. Sajan in the Western District of Washington, Case Number 2:22-cv-01835.

8.      Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1332 given the diversity of citizenship of the parties and because the amount in controversy exceeds the statutory minimum of $75,000.

9.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because defendant Alderwood resides in this judicial district, a substantial part of the acts or omissions giving rise to the claims set forth herein took place in this judicial district, and the Defendants are subject to this Court's personal jurisdiction with respect to this action.

///

///

COMPLAINT FOR DECLARATORY JUDGMENT – Page 2

1

## FACTUAL BACKGROUND

2      10.     The allegations in this Complaint regarding Defendants are based on allegations

3   in the underlying lawsuits described below.

4                              **The Underlying Lawsuit**

5      11.     On or around December 29, 2022, the State of Washington commenced a lawsuit

6   against ALDERWOOD SURGICAL CENTER, LLC, NORTHWEST NASAL SINUS CENTER

7   P.S., and JAVAD A. SAJAN, M.D. in the United States District Court Western District of

8   Washington at Seattle, Case Number 22:2-cv-01835 (the "Underlying Lawsuit").

9      12.     Hartford refers to all defendants named in the Underlying Lawsuit as the

10   "Underlying Defendants."

11      13.     The Underlying Lawsuit brought claims against the Underlying Defendants for

12   (1) Violations of Consumer Review Fairness Act (15 U.S.C. § 45b); (2) Violations of Health

13   Insurance Portability and Accountability Act (42 U.S.C. § 1320D-5, 45 C.F.R. § 164.508(b)(4));

14   (3) Violations of Consumer Protection Act (Wash. Rev. Code § 19.86.020 / Unfair or Deceptive

15   Acts or Practices / Relating to CRFA and HIPAA Violations); (4) Violations of Consumer

16   Protection Act (Wash. Rev. Code § 19.86.020 / Unfair or Deceptive Acts or Practices / Relating

17   to CRFA and HIPAA Violations); and (5) Violations of Consumer Protection Act (Wash. Rev.

18   Code § 19.86.020  / Unfair Competition).

19      14.     A true and correct copy of the Complaint filed by the State of Washington in the

20   Underlying Lawsuit (the "Underlying Complaint") is attached hereto as Exhibit 1 and is

21   incorporated herein.

22      15.     The Underlying Complaint alleges, "Dr. Sajan is the owner of . . . Defendant

23   Alderwood . . . which he acquired in 2016."

24      16.     The Underlying Complaint generally alleges that the Underlying Defendants

25   systematically suppressed negative patient reviews by using numerous illegal or unethical tactics,

26

COMPLAINT FOR DECLARATORY JUDGMENT
– Page 3

1   created false positive reviews, manipulated "before and after" photos, and misappropriated client

2   rebates.

3       17.     More specifically, the Complaint alleges that the Underlying Defendants took the

4   following unlawful, unfair, and deceptive actions:

     a.   Creating fake positive reviews on Google, Yelp, and other review sites using fake email accounts and fictional online personas;

     b.   Buying tens of thousands of fake "followers" on Instagram and thousands of fake "likes" on Instagram and other social media to create a false appearance of popularity for advertising to consumers;

     c.   Making deceptive digital alterations to "before and after" photos and using the altered photos to advertise on Instagram and other online media to make the results of surgery and other cosmetic services look better than they actually were;

     d.   Misappropriating cash rebates that [Alderwood's] patients earned under a customer loyalty program;

     e.   Requiring over 10,000 patients to sign illegal NDAs during the intake process that restricted them from posting negative reviews;

     f.   Requiring hundreds of those same patients to sign a second illegal NDA requiring them to remove any negative posted reviews and to refrain from posting negative reviews in the future;

     g.   Misleading their patients into believing the illegal NDA provisions were valid and enforceable, or creating that deceptive net impression;

     h.   Using illegal NDA provisions to threaten or coerce their patients into removing negative reviews after they are posted;

     i.   Using illegal NDA provisions that conditioned the provision of services to patients on patients' prior waiver of their rights to keep personal health care information confidential; and

     j.   Advertising the $100 consultation fee unconditionally and collecting payment from patients before disclosing that they must sign an illegal NDA before receiving services.

     18.     The Underlying Complaint also alleges that the Underlying Defendants either

knew or should have known that at least some, if not all, of the above listed actions were done at

COMPLAINT FOR DECLARATORY JUDGMENT
– Page 4

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
Telephone: (503) 242-2922

the direction of the Underlying Defendants and that the Underlying Defendants knew or should have known that the actions violated the Health Insurance Portability and Accountability Act, the Consumer Review Fairness Act, and the Washington Consumer Protection Act.

19.     The Underlying Complaint requests the following relief:

"1. That the Court adjudge and decree that Defendants have engaged in the conduct complained of herein;

2. That the Court declare, adjudge and decree that Defendants' conduct violates the CRFA, 15 U.S.C. § 45b, by using form NDAs restricting consumers from posting negative reviews of Defendants and requiring consumers to remove negative reviews previously posted;

3. That the Court declare, adjudge and decree that Defendants' conduct violates HIPAA, 45 C.F.R. § 164.508(b)(4), by requiring patients to give prior authorization to the disclosure of private patient health information as a condition to receiving medical treatment;

4. That the Court adjudge and decree that Defendants' acts and practices of (a) requiring patients to sign illegal NDAs during the intake process that restricted negative reviews and purported to authorize disclosure of patients' private health information; (b) requiring some patients to sign a second illegal NDA requiring them to remove negative reviews previously posted and refrain from posting negative reviews in the future; (c) misleading patients into believing illegal NDA provisions were valid and enforceable, or creating that deceptive net impression; (d) using illegal NDAs to threaten or coerce patients into removing negative reviews after they are posted; and (e) requiring patients to pay a $100 consultation fee before disclosing that they must also sign the illegal NDA in order to receive a consultation, all constitute unfair or deceptive acts or practices in trade or

COMPLAINT FOR DECLARATORY JUDGMENT – Page 5

commerce that affect the public interest, in violation of the CPA, Wash. Rev. Code § 19.86.020;

5. That the Court adjudge and decree that Defendants' acts and practices of (a) posting fake positive reviews that purported to be genuine consumer reviews; (b) taking cash rebates from patients that its patients earned and were entitled to receive under Galderma's customer loyalty program; (c) buying fake "followers" and fake "likes" on social media to create a false and deceptive appearance of greater popularity in the eyes of patients, the public, and consumers; and (d) altering "before and after" photos to make plastic surgery results look better than they actually were, all constitute additional unfair or deceptive acts or practices in trade or commerce that affect the public interest, in violation of the CPA, Wash. Rev. Code § 19.86.020;

6. That the Court adjudge and decree that Defendants' conduct complained of herein constitutes unfair methods of competition in violation of the CPA, Wash. Rev. Code § 19.86.020;

7. That the Court, pursuant to Wash. Rev. Code § 19.86.140, assess civil penalties against Defendants of up to seven thousand five hundred dollars ($7,500) per violation for each and every violation of Wash. Rev. Code § 19.86.020 committed by Defendants;

8. That the Court, pursuant to 42 U.S.C. § 1320d-5(d)(2), assess statutory damages of up to $100 per violation, not to exceed $25,000 per calendar year, for each and every violation of HIPAA, 45 C.F.R. § 164.508(b)(4);

9. That the Court, pursuant to Wash. Rev. Code § 19.86.080, order restitution or equitable disgorgement to consumers of all money Defendants unlawfully acquired from them through Defendants' unlawful, unfair and deceptive actions described above, including prejudgment interest;

COMPLAINT FOR DECLARATORY JUDGMENT – Page 6

10. That the Court issue a preliminary and/or permanent injunction pursuant to the CPA, Wash. Rev. Code § 19.86.080, the CRFA, 15 U.S.C. § 45b(e)(1), and HIPAA, 42 U.S.C. § 1320d-5(d)(1)(A), enjoining and restraining Defendants and their representatives, successors, assigns, officers, agents, servants, employees, and all other persons acting or claiming to act for, on behalf of, or in concert or participation with Defendants, from engaging in the acts and practices in violation of the CPA, the CRFA, and HIPAA as specifically alleged above and any similar acts and unfair business practices regarding consumers;

11. That the Court adjudge and decree that the form NDAs that Defendants' patients were required to sign are void and unenforceable;

12. That the Court order that the Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, are permanently enjoined from offering, attempting to enforce, or asserting the validity of, any form NDA that conditions treatment upon prior authorization of disclosure of the patient's private health information;

13. That the Court require Defendants to notify their patients in writing, the form of which shall be approved by the Court, that the prior NDAs are void and that all patients who signed these illegal NDAs are free to post honest reviews of Defendants notwithstanding the restrictions in those form agreements, that their purported authorization of the disclosure of protected health information is invalid, and that the Court further require Defendants to provide this notice on their website for at least three years or such other reasonable period as determined by the Court;

14. That the Court order Defendants to pay the State its costs of bringing this action, including reasonable attorneys' fees, pursuant to Wash. Rev. Code § 19.86.080; and

COMPLAINT FOR DECLARATORY JUDGMENT – Page 7

1   15. That the Court grant such other or additional relief as it may deem just and

2   proper."

3                          **The Insurance Policies**

4   20.     Hartford issued Policy 34 SBA IJ5127 DX to the named insured Alderwood

5   Surgery Center, LLC, which was in effect for the policy period from December 22, 2016 to

6   December 22, 2017 (the "2016-2017 Policy"). The 2016-2017 Policy, attached as Exhibit 2[1],

7   includes commercial general liability insurance, subject to the terms and conditions therein.

8   21.     Hartford issued Policy 52 SBA IJ5127 SC to the named insured Alderwood

9   Surgery Center, LLC and its various associated business names from December 22, 2017 to

10  December 22, 2018 (the "2017-2018 Policy"). The 2017-2018 Policy, attached as Exhibit 3,

11  includes commercial general liability insurance, subject to the terms and conditions therein.

12  22.     Hartford issued Policy 52 SBA IJ5127 SC to the named insured Alderwood

13  Surgery Center, LLC and its various associated business names from December 22, 2018 to

14  December 22, 2019 (the "2018-2019 Policy"). The 2018-2019 Policy, attached as Exhibit 4,

15  includes commercial general liability insurance, subject to the terms and conditions therein.

16  23.     Hartford issued Policy 52 SBA IJ5127 SC to the named insured Alderwood

17  Surgery Center, LLC and its various associated business names from December 22, 2019 to

18  December 22, 2020 (the "2019-2020 Policy"). The 2019-2020 Policy, attached as Exhibit 5,

19  includes commercial general liability insurance, subject to the terms and conditions therein.

20  24.     Hartford issued Policy 52 SBA IJ5127 SC to the named insured Alderwood

21  Surgery Center, LLC and its various associated business names from December 22, 2020 to

22  December 22, 2021 (the "2020-2021 Policy"). The 2020-2021 Policy, attached as Exhibit 6,

23  includes commercial general liability insurance, subject to the terms and conditions therein.

24

25

26  [1] Premium information has been redacted from all insurance policies attached as exhibits to this Complaint.

COMPLAINT FOR DECLARATORY JUDGMENT
– Page 8

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
Telephone: (503) 242-2922

25.     Hartford issued Policy 52 SBA IJ5127 SC to the named insured Alderwood Surgery Center, LLC and its various associated business names from December 22, 2021 to December 22, 2022 (the "2021-2022 Policy"). The 2021-2022 Policy, attached as Exhibit 7, includes commercial general liability insurance, subject to the terms and conditions therein.

26.     The 2016-2017 Policy, the 2017-2018 Policy, the 2018-2019 Policy, the 2019-2020 Policy, the 2020-2021 Policy, and the 2021-2022 Policy (collectively the "Policies") are each defined by their terms, and any coverage under the Policies are subject to deductibles as well as their definitions, conditions, exclusions, endorsements, and limits of liability.

27.     The Business Liability Coverage Form for the Policies contains an Insuring Agreement and certain exclusions, Section A.1. of the Business Liability Coverage Form, SS 00 08 04 05 of the Policies are identical and state in relevant part:

> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance does not apply.
>
> We may, at our discretion, investigate any 'occurrence' or offense and settle any claim or 'suit' that may result. But:
>
> > (1) The amount we will pay for damages is limited as described in Section D. - Liability And Medical Expenses Limits Of Insurance; and
> >
> > (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or medical expenses to which this insurance applies.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments.

28.     Section C of the Business Liability Coverage Form, SS 00 08 04 05 of the Policies are identical and state in relevant part:

COMPLAINT FOR DECLARATORY JUDGMENT – Page 9

If you are designated in the Declarations as . . . A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insured, but only with respect to their duties as your managers.

. . .

Any subsidiary and subsidiary thereof, of yours which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this Coverage Part.

The insurance afforded herein for any subsidiary not shown in the Declarations as a named insured does not apply to injury or damage with respect to which an insured under this insurance is also an insured under another policy or would be an insured under such policy but for its termination or upon the exhaustion of its limits of insurance.

. . .

Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain financial interest of more than 50% of the voting stock, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.  Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

b.  Coverage under this provision does not apply to:

(1) 'Bodily injury' or 'property damage' that occurred; or

(2) 'Personal and advertising injury' arising out of an offense committed before you acquired or formed the organization.

29.     Section G.17 of the Business Liability Coverage Form, SS 00 08 04 05 of the Policies, as modified by Endorsements, SS 00 60 09 15, SS 40 26 06 11, and SS 40 26 03 17 are identical and define "Personal and Advertising Injury" as follows:

'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

COMPLAINT FOR DECLARATORY JUDGMENT – Page 10

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral, written or electronic publication of material that violates a person's right of privacy;

f. Copying, in your 'advertisement' or on 'your web site', a person's or organization's 'advertising idea' or style of 'advertisement';

g. Infringement of copyright, slogan, or title of any literary or artistic work, in your 'advertisement' or on 'your web site'; or

30.     Endorsements SS 40 26 06 11 and SS 40 26 03 17 of the Policies also add the following to the definition of "personal and advertising injury," "As used in this definition, oral, written or electronic publication includes publication of material in your care, custody or control by someone not authorized to access or distribute that material."

31.     Endorsements SS 40 26 06 11 and SS 40 26 03 17 of the Policies also add the following to the definition to the Policies, "'Your web site' means a web page or set of interconnected web pages prepared and maintained by you, or by others on your behalf, for the purposes of promoting your goods or services, that is accessible over a computer network."

32.     Section B.1.a(2) of the Business Liability Coverage Form, SS 00 08 04 05 of the Policies contains the following exclusion, "This insurance does not apply to . . . 'Personal and advertising injury' arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting 'personal and advertising injury'."

33.     Section B.1.j. of the Business Liability Coverage Form, SS 00 08 04 05 of the Policies contains the following exclusion:

> This insurance does not apply to . . . 'Bodily injury', 'property damage' or 'personal and advertising injury' arising out of the rendering of or failure to render any professional service. This includes but is not limited to . . .

COMPLAINT FOR DECLARATORY JUDGMENT – Page 11

> (4) Medical, surgical . . . or nursing services treatment, advice or instruction;
>
> (5) Any health or therapeutic service treatment, advice or instruction; [and]
>
> (6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming.

34.     The Policies as modified by Endorsements SS 40 26 06 11, § A, SS 40 26 03 17, and SS 00 60 09 15, § A contains the following exclusion:

This insurance does not apply to . . . 'Personal and advertising injury':

(1) Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of a criminal act committed by or at the direction of the insured;

(4) Arising out of any breach of contract, except an implied contract to use another's 'advertising idea' in your 'advertisement' or on 'your web site';

(5) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement' or on 'your web site';

(6) Arising out of the wrong description of the price of goods, products or services;

. . .

(11) Arising out of the violation of a person's right of privacy created by any state or federal act. However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act; [or]

. . .

(15) Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

COMPLAINT FOR DECLARATORY JUDGMENT – Page 12

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**Common Allegations**

35.     On or around January 6, 2023, Hartford received notice of the Underlying Complaint being filed in the Underlying Lawsuit.

36.     On or around February 13, 2023, Hartford provided Alderwood and Dr. Sajan with a defense under a full reservation of rights.[2]

37.     After agreeing to provide Alderwood and Dr. Sajan with a defense under a full reservation of rights, Alderwood and Dr. Sajan requested that Hartford fund Counterclaims against the State of Washington in the Underlying Lawsuit (the "Counterclaims").

38.     Hartford agreed to fund the Counterclaims on behalf of Alderwood and Dr. Sajan under a full reservation of rights.[3]

**FIRST CLAIM FOR RELIEF**

**(DECLARATORY JUDGMENT – DUTY TO DEFEND)**

39.     Hartford re-alleges and incorporates by reference all previous paragraphs as if fully set forth herein.

40.     There is an actual, substantial, and justiciable controversy between Hartford and Defendants concerning Harford's obligations under the Policies with regard to the State of Washington's allegations in the Underlying Complaint.

41.     Pursuant to 28 U.S.C. § 2201, Hartford is entitled to a declaration by this Court of its rights and duties related to the defense and indemnification of Alderwood and Dr. Sajan concerning the State of Washington's allegations in the Underlying Lawsuit under the Policies.

---

[2] Hartford denied any coverage for defense or indemnity for Northwest Nasal Sinus Center P.S. as it was not an insured under the Policies.
[3] Hartford did not agree to fund Counterclaims on behalf of Northwest Nasal Sinus Center P.S. as it was not an insured under the Policies.

COMPLAINT FOR DECLARATORY JUDGMENT – Page 13

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
Telephone: (503) 242-2922

42.    Hartford has no duty to defend Alderwood or Dr. Sajan against the State of Washington's claims in the Underlying Lawsuit because the allegations therein do not allege "damages because of" "property damage" or "bodily injury" as defined in the Policies.

43.    Hartford has no duty to defend Alderwood or Dr. Sajan against the State of Washington's claims in the Underlying Lawsuit because the allegations therein do not allege "damages because of" "Personal and Advertising Injury" as defined in the Policies.

44.    Hartford has no duty to defend Alderwood or Dr. Sajan against the State of Washington's claims in the Underlying Lawsuit because coverage for the allegations therein are barred by the exclusions quoted above.

45.    Since Hartford has no duty to defend Alderwood or Dr. Sajan in the Underlying Lawsuit, Hartford has no duty to fund the Counterclaims in the Underlying Lawsuit.

46.    Independent of any potential duty to defend the claims asserted against the Underlying Defendants in the Underlying Lawsuit, Hartford has no duty to fund the Counterclaims in the Underlying Lawsuit because the Counterclaims are not "damages because of" "property damage" or "bodily injury" as defined in the Policies.

47.    Independent of any potential duty to defend the claims asserted against the Underlying Defendants in the Underlying Lawsuit, Hartford has no duty to fund the Counterclaims in the Underlying Lawsuit because the Counterclaims are not "damages because of" "Personal and Advertising Injury" as defined in the Policies.

48.    Independent of any potential duty to defend the claims asserted against the Underlying Defendants in the Underlying Lawsuit, Hartford has no duty to fund the Counterclaims because the Counterclaims are barred by the exclusions quoted above.

49.    Independent of any potential duty to defend the claims asserted against the Underlying Defendants in the Underlying Lawsuit, Hartford has no duty to fund the Counterclaims in the Underlying Lawsuit because the Counterclaims are affirmative claims

COMPLAINT FOR DECLARATORY JUDGMENT – Page 14

brought and prosecuted by Alderwood and Dr. Sajan for which Hartford has no obligation to fund under the Policies.

## SECOND CLAIM FOR RELIEF

## (DECLARATORY JUDGMENT – DUTY TO INDEMNIFY)

50.     Hartford re-alleges and incorporates by reference all previous paragraphs as if fully set forth herein.

51.     There is an actual, substantial, and justiciable controversy between Hartford and Defendants concerning Harford's obligations under the Policies with regard to the State of Washington's allegations in the Underlying Complaint.

52.     Pursuant to 28 U.S.C. § 2201, Hartford is entitled to a declaration by this Court of its rights and duties related to the defense and indemnification of Alderwood and Dr. Sajan concerning the State of Washington's allegations in the Underlying Lawsuit under the Policies.

53.     Hartford has no duty to indemnify Alderwood or Dr. Sajan under the Policies for any damages awarded to the State of Washington by means of the Underlying Lawsuit because those damages are not covered and/or are excluded under the Policies as alleged above. Alternatively, if coverage is not barred in its entirety, Hartford's indemnity obligation is limited consistent with the terms of Policies as set forth above.

**WHEREFORE**, Hartford prays for judgment as follows:

1.     A declaration that Hartford does not have a duty to defend Alderwood or Dr. Sajan under the Policies against the State of Washington's allegations in the Underlying Lawsuit;

2.     A declaration that Hartford does not have a duty to fund the Counterclaims brought and prosecuted by Alderwood and Dr. Sajan in the Underlying Lawsuit;

3.     A declaration that Hartford does not have a duty to indemnify Alderwood or Dr. Sajan under the Policies for the prayers for relief sought by the State of Washington or

that, alternatively, Hartford's indemnity obligation is limited consistent with the terms of Policies as set forth above; and

4.      For such other relief that the Court deems just and proper.

DATED this 16th Day of November, 2023.

Respectfully Submitted:

**GORDON & POLSCER, L.L.C.**

By: *s/ Brian C. Hickman*
Brian C. Hickman, WSBA No. 50089
9020 SW Washington Square Road, Suite 560
Tigard, Oregon 97223
Telephone Number: (503) 242-2922
Email: **bhickman@gordon-polscer.com**

By: *s/ Austin K. Smith*
Austin K. Smith, WSBA No. 59487
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone Number: (206) 223-4226
Email: **asmith@gordon-polscer.com**

*Counsel for Plaintiff*
*SENTINEL INSURANCE COMPANY, LTD.*

COMPLAINT FOR DECLARATORY JUDGMENT – Page 16